## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Charles Richard Stone, | Case No. 11-cv-0951 (WMW/HB) |
| Plaintiff, | |
| v. | **AMENDED ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION** |
| Lucinda E. Jesson, individually and in her official capacity as Minnesota Commissioner of Human Services, et al., | |
| Defendants. | |

In this lawsuit, Plaintiff Charles R. Stone challenges policies of the Minnesota Sex Offender Program ("MSOP") and actions of the Defendants that restrict his and other MSOP clients' possession of certain media items. Currently before the Court are the July 15, 2016 Report and Recommendation ("R&R") of United States Magistrate Judge Janie S. Mayeron,[1] (Dkt. 36), and the parties' objections to the R&R, (Dkts. 41, 44).[2] Also before the Court is a motion filed by Stone after the R&R was issued that seeks to prevent other MSOP clients from filing documents in this lawsuit. (Dkt. 42.) For the reasons addressed below, the parties' objections are overruled in part and sustained in part, the R&R is adopted in part and rejected in part, and Stone's motion to enjoin other MSOP clients from filing documents in this case is denied.

---

[1] Following Magistrate Judge Mayeron's retirement, this case was reassigned to United States Magistrate Judge Hildy Bowbeer.

[2] This sentence has been edited to correct a typographical error in the Court's March 10, 2017 Order, (Dkt. 49). This Amended Order is identical to the Court's March 10, 2017 Order in all other respects.

## BACKGROUND

Stone, who is civilly committed to MSOP in Moose Lake, commenced this action under 42 U.S.C. § 1983 against seven state officials and MSOP employees individually and in their official capacities.   Defendants are Lucinda E. Jesson, Minnesota Commissioner of Human Services; Dennis L. Benson, Executive Director of MSOP; Thomas Lundquist, Clinical Director of MSOP in Moose Lake, Minnesota; Greg Carlson, Assistant Executive Director of MSOP; Kevin Moser, Program Director of MSOP; David Prescott, former Clinical Director of MSOP; and Robert D. Liggett, Media Review Team Supervisor of MSOP.   Stone's complaint asserts two counts against these individuals. Count One alleges that Minn. Stat. § 246B.04, subd. 2, is unconstitutional, both facially and as-applied to Stone.   Count Two alleges that Defendants' failure to apply MSOP's 2007 Media Policy (the "Media Policy") violates Stone's rights guaranteed by the First and Fourteenth Amendments to the United States Constitution.   Stone also alleges that certain MSOP employees have interfered with his right to access the courts to redress violations of his constitutional rights.

Stone's allegations focus on Defendants' failure to apply the Media Policy.  Stone asserts that MSOP's Media Review Team has erroneously categorized as "prohibited" under the Media Policy certain media that should be permitted.  Stone also alleges that the Media Review Team reviews all media arriving at MSOP and restricts the access of MSOP clients to magazines and certain movies rated "G," "PG," and "PG-13," despite a provision in the Media Policy that categorizes such movies as "permitted" without being subject to individual review.  These procedures, Stone asserts, not only are inconsistent

with the Media Policy, but they also impermissibly restrict MSOP clients' First Amendment right to access materials that have been improperly categorized as prohibited.

Defendants moved to dismiss Stone's complaint and advanced several arguments, including that Defendants Jesson and Prescott were not properly served, that Defendants are entitled to Eleventh Amendment immunity from Stone's claims for damages against them in their official capacities and qualified immunity from his claims against them in their individual capacities.  Defendants also argue that Stone's allegations fail to state a claim on which relief can be granted as to any legal theory asserted in the complaint.

Stone subsequently filed two additional motions that are unrelated to the merits of his complaint.  Stone's motion for a permanent injunction seeks to enjoin Defendants from tampering with, holding, opening or investigating Stone's mail pertaining to his legal proceedings.  That motion also seeks to enjoin Defendants from retaliating against Stone for initiating this lawsuit.  And in his "Motion to Dismiss Defendant's [sic] [M]otion to Dismiss," Stone argues that the Court should strike Defendants' motion to dismiss because Defendants had not timely served Stone with their motion papers.  Stone characterizes Defendants' act of filing their motion to dismiss without serving him as an ex parte communication with the Court.

United States Magistrate Judge Janie S. Mayeron issued an R&R on July 15, 2016.[3]   The R&R recommends dismissing most of Stone's claims without prejudice. However, the R&R concludes that Stone's Section 1983 claims against Defendants Liggett and Moser for violating Stone's First Amendment rights should be permitted to proceed.   The R&R also recommends denying Stone's motion for a permanent injunction and motion to dismiss Defendants' motion to dismiss.

All parties filed objections.   Defendants object to the R&R to the extent it recommends that Stone's Section 1983 claims based on the First Amendment should be permitted to proceed against Liggett and Moser and concludes that Liggett and Moser are not entitled to qualified immunity.   Stone's objections track the structure of the R&R and address each section of its analysis, but Stone concedes that several of the R&R's conclusions are correct.   Although in many respects Stone's arguments are difficult to follow, he clearly objects to two of the R&R's conclusions: (1) that his claims for prospective injunctive relief against Defendants in their official capacities should be dismissed and (2) that the complaint fails to state a claim for violation of his due process rights under the Fourteenth Amendment.

Since the R&R was issued, Stone also has filed a "Motion to Enjoin Other Parties from [Filing] on Suit Without First Obtaining Permission from Court or from Plaintiff Charles R. Stone Exclusively."   In that motion, Stone seeks an order prohibiting other MSOP clients from filing motions or other documents in this case because, Stone asserts,

---

[3]   The case was stayed for approximately four years because of its potential relationship to *Karsjens v. Jesson*, Civil No. 11-3659 (D. Minn.).   The stay was lifted on April 14, 2016.

other MSOP clients are conspiring to dissuade him from pursuing this litigation or are seeking to maintain this lawsuit under their own names.

## ANALYSIS

### I.    Defendants' Objections to the R&R

Defendants' objections to the R&R are twofold.  First, Defendants object to the recommendation to deny their motion to dismiss as to Stone's claims against Liggett and Moser both in their official capacities for prospective injunctive relief and in their individual capacities.  Second, Defendants object to the recommendation to conclude that Liggett and Moser are not entitled to qualified immunity.  The Court reviews each legal issue de novo.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); LR 72.2(b)(3); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam).

### A.    First Amendment Claims Against Defendants Liggett and Moser

The R&R concludes that Stone's allegations are sufficient to state a Section 1983 claim that his First Amendment rights are being violated by Defendants Liggett and Moser and Defendants have not established as a matter of law that their actions through MSOP are consistent with the First Amendment.

To state a claim for relief under Section 1983, a plaintiff must allege "(1) that the defendant acted under color of state law, and (2) that the alleged conduct deprived the plaintiff of a constitutionally protected federal right."  *Van Zee v. Hanson*, 630 F.3d 1126, 1128 (8th Cir. 2011).  Here, because Defendants do not dispute that their actions at MSOP are taken under color of state law, the only question is whether Defendants' alleged conduct in restricting Stone's access to certain media deprives Stone of a

constitutionally protected federal right.  Stone alleges that Defendants have "prohibit[ed]" protected speech" by failing to properly apply the Media Policy.

"The right of freedom of speech 'includes not only the right to utter or to print, but the right to distribute, the right to receive, the right to read' as well as 'freedom of inquiry' and 'freedom of thought.' "  *Karsjens v. Jesson*, 6 F. Supp. 3d 916, 938-39 (D. Minn. 2014) (quoting *Griswold v. Connecticut*, 381 U.S. 479, 482 (1965)).  Civilly committed individuals have liberty interests that are "considerably less than those held by members of free society," but they are nonetheless "entitled to more considerate treatment and conditions of confinement" than prisoners.  *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) (internal quotation marks omitted); *see also Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004) ("Although an involuntarily committed patient of a state hospital is not a prisoner per se, his confinement is subject to the same safety and security concerns as that of a prisoner.").  In *Turner v. Safley*, the Supreme Court of the United States explained that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  482 U.S. 78, 89 (1987).

When addressing the constitutionality of limitations placed on the rights of MSOP patients, courts in this District have employed a modified *Turner* analysis.  *See Karsjens*, 6 F. Supp. 3d at 937 (evaluating MSOP patient's First Amendment claims "in light of appropriate therapeutic interests as well as relevant safety and security concerns"); *Ivey v. Mooney*, No. 05-2666, 2008 WL 4527792, at *5 (D. Minn. Sept. 30, 2008) (approving application of *Turner* factors to determine whether the Media Policy "is reasonably

related to legitimate institutional and therapeutic interests"). To determine whether a restriction on MSOP patients' liberty is constitutional, four *Turner* factors are considered:

> (1) whether there is a valid rational connection between the regulation and the legitimate government interest it purports to further; (2) whether the inmate has an alternative means of exercising his constitutional right; (3) the impact that accommodation of the inmate's right would have upon others, including inmates as well as non-inmates; and (4) the absence of a ready alternative to the regulation.

*Ivey*, 2008 WL 4527792, at *5 (quoting *Ortiz v. Fort Dodge Corr. Facility*, 368 F.3d 1024, 1026 (8th Cir. 2004)). It is the plaintiff's burden to prove that a restriction is not reasonably related to the legitimate interest it purports to further. *See Abdullah v. Gunter*, 949 F.2d 1032, 1035 (8th Cir. 1991) (applying *Turner*).

The magistrate judge concluded that the record at this stage does not support a determination that Stone's claims fail as a matter of law under the *Turner* test. Defendants object to this aspect of the R&R's analysis, arguing that the magistrate judge "incorrectly interprets the Rule 12(b)(6) standard as requiring factual information sufficient to support an ultimate holding in Defendants' favor." It is true that the R&R misstates the Rule 12(b)(6) legal standard when stating that "there are fact disputes about the very essence of plaintiff's claims." This is the summary judgment standard rather than the motion to dismiss standard. But the Court agrees with the magistrate judge's conclusion that Stone's allegations are sufficient to state a claim that his First Amendment rights are being violated.

Stone has stated a claim for relief as to whether Defendants' implementation of the Media Policy restricts MSOP patients' rights to access certain media in a manner that can

7

pass constitutional muster.  To prevail on the merits, Stone must present evidence and legal argument that demonstrate that Defendants' restrictions on his access to media materials are inconsistent with the *Turner* test described above.  But Stone's allegations that Defendants' conduct impermissibly restricts his First Amendment rights are sufficient to state a claim for relief under Section 1983 and survive a motion to dismiss.

Defendants rely heavily on *Banks v. Jesson*, in which the court addressed a plaintiff's Section 1983 claim that MSOP's confiscation of certain media items violated his First Amendment rights.  No. 11-cv-1706, 2016 WL 3566207 (D. Minn. June 27, 2016).  But the procedural posture of the *Banks* decision offers a meaningful distinction. Because *Banks* was at the summary judgment stage, the court had a fully developed record on which to assess Banks' claims.  Here, the magistrate judge expressly—and correctly—distinguished *Banks*, explaining that because this case is before the Court on Defendants' motion to dismiss, there is no record on which to conduct a *Turner* analysis.

Because Stone's allegations, when taken as true for this analysis, are sufficient to state a claim that Defendants' implementation of the Media Policy and the actions of the Media Review Team violate his First Amendment right to receive and consume media, Defendants' objection to the R&R is overruled and their motion to dismiss Stone's First Amendment claims is denied.

### B.   Qualified Immunity

Having already dismissed the claims against all other Defendants in their individual capacities, the R&R addressed only whether Defendants Liggett and Moser are entitled to qualified immunity.  The R&R concludes that Liggett and Moser are not

entitled to qualified immunity because the complaint plausibly alleges that they were involved in the violation of Stone's constitutional rights. Defendants object, arguing that Liggett and Moser acted in accordance with established law when they restricted MSOP patients' access to the media identified in Stone's complaint.[4]

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). Courts consider two factors to determine whether an official is entitled to qualified immunity: "(1) whether the facts alleged or shown, construed most favorably to the plaintiff[], establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful." *Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013). A constitutional right is clearly established only if the unlawfulness of the official's action is apparent in light of pre-existing law. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Here, Stone's remaining claim against Defendants is that the manner in which they applied the Media Policy violated Stone's First Amendment rights. Even if Stone's claim prevails as a First Amendment violation, Defendants could not have known at the time of their actions that they infringed Stone's clearly established rights. At least one other

---

[4]      In his objections, Stone asserts that Defendants are not entitled to qualified immunity. The Court analyzes de novo the issue of qualified immunity as to all Defendants.

court in this District has concluded that the Media Policy is constitutional.  *See Ivey*, 2008 WL 4527792, at *6.  And no appellate court has ruled to the contrary.  In light of these decisions as to the constitutionality of the Media Policy, it was reasonable for Defendants to believe that actions consistent with that policy would not violate the rights of MSOP patients.  Even if the re-classification of media materials is not permitted under the Media Policy, Stone does not plausibly allege that Defendants had reason to believe, when their alleged conduct occurred, that their actions violated Stone's clearly established constitutional rights.  Consequently, Defendants' objection to the R&R is sustained, Defendants are entitled to qualified immunity, and Stone's claims against all Defendants in their individual capacities are dismissed.

## II.    Plaintiff's Objections to the R&R

The Court understands Stone's memorandum to raise objections to two of the R&R's conclusions: (1) that Stone's claims for prospective injunctive relief against Defendants in their official capacities should be dismissed and (2) that Stone's complaint fails to state a claim for violation of his due process rights under the Fourteenth Amendment.[5]   The Court reviews each of these issues de novo.   *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); LR 72.2(b)(3); *Grinder*, 73 F.3d at 795.

### A.    Stone's Claims for Prospective Injunctive Relief

---

[5]    In Part I.B, the Court reviewed de novo Stone's objection as to whether Defendants are entitled to qualified immunity.  Consequently, the Court need not revisit that issue here.

The R&R recommends dismissal of Stone's claims for prospective injunctive relief against Jesson, Prescott, Carlson, Benson and Lundquist in their official capacities. This recommendation rests on the conclusion that Stone failed to allege any facts indicating that Jesson, Prescott, Carlson, Benson and Lundquist were personally involved with the Media Review Team or the implementation of the Media Policy. The R&R also emphasized that, because Jesson, Benson and Prescott are no longer employed by MSOP, they cannot be enjoined from committing any further violations of federal law. However, the R&R recommends that Stone's claims for prospective injunctive relief against Moser and Liggett in their official capacities should proceed, assuming that Moser and Liggett remain employed by MSOP and retain their duties related to implementation of the Media Policy.

Because vicarious liability does not apply in a Section 1983 action, a Section 1983 plaintiff must allege that a government official has personally violated the plaintiff's constitutional rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Although there is no respondeat superior liability under Section 1983, a supervisor nonetheless may be liable if the supervisor's action or failure to properly supervise and train the employee caused the constitutional violation or if the supervisor "is involved in creating, applying, or interpreting a policy that gives rise to unconstitutional conditions." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (internal quotation marks omitted). In deciding whether Stone has stated a claim for prospective injunctive relief against Defendants in their official capacities, the critical question is the extent of each official's involvement with the enforcement of the allegedly unconstitutional law or policy. *See id.*

The R&R concludes that Stone's claims for injunctive relief against Jesson, Prescott, Carlson, Benson and Lundquist fail because the complaint does not allege that any of these individuals are directly involved in the conduct at issue.  But to the extent Stone alleges that these individuals are supervisors who are responsible for oversight of MSOP and enforcement of its policies as part of their official duties, additional allegations of their direct involvement are unnecessary.  *See id.*  The complaint alleges that Prescott and Lundquist, in their capacities as Clinical Director of MSOP, and Benson, in his capacity as Executive Director, have some authority to direct and supervise the implementation of the Media Policy.  Jesson, as Commissioner of Human Services, was statutorily required to "establish and maintain the Minnesota sex offender program" and to "adopt rules to govern the operation, maintenance, and licensure of secure treatment facilities operated by the Minnesota sex offender program."  Minn. Stat. §§ 246B.02, 246B.04, subd. 1 (2016).  These official duties are sufficient to permit Stone's claims for prospective injunctive relief to proceed against Jesson, Prescott, Benson and Lundquist in their official capacities.

Regarding Carlson, however, the only allegation in the complaint is that he is the "Director of the MSOP."  It is not evident, either from the complaint or MSOP's governing statutes, what responsibilities Carlson has, if any, for the creation and implementation of MSOP policies.  *See generally* Minn. Stat. §§ 246B.01-10 (2016). Consequently, the complaint fails to state a claim for relief as to Carlson in his official capacity.

12

The R&R also concludes that the Court cannot enjoin the future actions of Jesson, Benson or Prescott in this case because they no longer have any official involvement with MSOP.  Similarly, the R&R concludes that Stone's claims against Liggett and Moser should proceed only if those individuals remain employed by MSOP.  But the viability of Stone's claims when alleged against individuals *in their official capacities* is unaffected by the fact that a different person may now hold the relevant office.  Instead, the replacement of the named official results in the automatic substitution of the official's successor in office.  Fed. R. Civ. P. 25(d); *Kentucky v. Graham*, 473 U.S. 159, 166 n.11 (1985).

Stone has alleged that all of the named Defendants except Carlson, in their official capacities, were responsible for establishing and enforcing the very policies Stone is challenging.  Therefore, Stone's objection is sustained, except as to Carlson.  The R&R concludes that Stone's complaint states a claim on which relief can be granted against Liggett and Moser, but not against Carlson, in their official capacities.  Those conclusions are adopted.  The Court rejects the R&R's conclusion that Stone's official-capacity claims against Jesson, Prescott, Benson and Lundquist do not survive beyond the tenure of the office holder.  Consequently, Defendants' motion to dismiss Stone's claims for prospective injunctive relief against Defendants in their official capacities is granted only as to Carlson.

**B.      Stone's Fourteenth Amendment Due Process Claim**

The R&R also concludes that Stone's complaint fails to state a claim that Liggett or Moser violated Stone's Fourteenth Amendment right to due process because there are no allegations in the complaint that Stone was deprived of constitutionally adequate process.  Stone objects to this conclusion, asserting that he alleges the deprivation of a constitutionally protected property interest.

A procedural due process claim focuses on whether the State employed constitutionally adequate procedures in depriving a person of liberty or property, rather than on the merits of the deprivation.  *Parrish v. Mallinger*, 133 F.3d 612, 615 (8th Cir. 1998).  Analyzing the merits of a procedural due process claim involves two steps. *Senty-Haugen*, 462 F.3d at 886.  The first step of the analysis determines whether the plaintiff has been deprived of a protected liberty or property interest.  *Id.*  If the plaintiff has a protected property interest, the second step determines what process is due by balancing three factors: the affected interest, the likelihood that the procedures provided would result in an erroneous deprivation, and the government interest in providing the process that it did, including the administrative costs and burdens of providing additional process. *Id.*  (citing *Mathews v. Eldridge*, 424 U.S. 319, 332-35 (1976)).

Stone's objections assert that he has a protected property interest without specifying what that protected property interest entails.  Based on the cases he cites, it appears Stone argues that he has a protected property interest in the benefit—conferred by the Media Policy—of certain movies being on the "Permitted" list.  For example, Stone relies on *Sealed v. Sealed*, in which the court explained,

> [T]o claim a protected property interest in a particular administrative benefit or measure, an individual must have 'a legitimate claim of entitlement' in receiving the benefit or measure, not merely 'a unilateral expectation' in a desired administrative outcome. Where the administrative scheme does not require a certain outcome, but merely *authorizes* particular actions and remedies, the scheme does not create 'entitlements' that receive constitutional protection under the Fourteenth Amendment.

332 F.3d 51, 56 (2d Cir. 2003) (citations omitted).[6]  Here, the two movies that Stone alleges were improperly classified—"American Girl: Chrissa Stands Strong" and "Kickass 2010"—do not fall into the category of materials that are automatically classified as "Permitted" under the Media Policy.  Because the Media Policy vests discretion in MSOP officials to classify movies that are R-rated or unrated, Stone does not have a constitutionally protected property interest in any particular classification of those movies, even under the authority he cites.  *See id.*

Even if Stone had a protected property interest in the classification of movies,[7] Stone does not allege that he is entitled to more procedural safeguards than those afforded by MSOP.  *See Senty-Haugen*, 462 F.3d at 886.  Instead, Stone's allegations focus on the merits of the re-classifications and his contention that the re-classification process violated the Media Policy.  Even if Defendants failed to follow the Media Policy, that failure is not necessarily a constitutional violation.  Stone admits that the Media Policy

---

[6]     *Hydrick v. Hunter*, 500 F.3d 978 (9th Cir. 2007), also cited by Stone, was vacated by the Supreme Court of the United States in 2009.

[7]     Stone also cites *McCrae v. Hankins*, 720 F.2d 863, 869 (5th Cir. 1983), for the proposition that "when inmates are afforded the opportunity, whether by 'right' or 'privilege,' to possess personal property, they enjoy a protected interest in that property that cannot be infringed without due process."  Because Stone has not alleged that he actually possessed any of the media items he now claims were impermissibly re-classified, this case is inapposite.

permits MSOP patients to appeal the classification of media by completing a grievance request, and he does not explain how the procedures provided are inadequate to satisfy the demands of due process.

Because the allegations in Stone's complaint fail to state a claim that Defendants violated Stone's due-process rights, Stone's objection is overruled, the R&R's conclusion is adopted, and Stone's claims premised on the alleged violation of his due-process rights are dismissed without prejudice.

## III.    Conclusions of the R&R to Which No Objections Were Filed

The R&R reaches conclusions on several other issues to which neither party objects.[8]   Specifically, the R&R recommends that the Court: (1) deny Jesson's and Prescott's motion to dismiss for insufficient service of process; (2) dismiss Stone's claims for damages against all Defendants in their official capacities based on Eleventh Amendment immunity; (3) dismiss Stone's claims against Jesson, Prescott, Carlson, Benson and Lundquist in their individual capacities; (4) dismiss for lack of standing Stone's facial challenges to Minnesota Statutes section 246B.04, subdivision 2, and the Media Policy; (5) dismiss for failure to state a claim on which relief can be granted (a) Stone's claim that Defendants violated his Fourteenth Amendment right to equal protection, and (b) Stone's claim for violation of his right to access the courts; (6) deny Stone's motion for a permanent injunction; and (7) deny Stone's motion to dismiss

---

[8]    Although Stone does not object to several of the R&R's conclusions, he repeatedly asserts that any dismissal of his claims should be without prejudice to permit him to amend his complaint.

Defendants' motion to dismiss.   Neither Stone nor any Defendant objects to these recommendations.

The Court reviews for clear error those portions of the R&R to which no objection was filed.   *See* Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); *Grinder*, 73 F.3d at 795.   Having reviewed the portions of the R&R to which neither party objected, the only clear error the Court has identified is that the magistrate judge should have recommended denying Jesson's and Prescott's motion to dismiss for insufficiency of process as waived, rather than as moot.   A federal court lacks personal jurisdiction over a defendant who has not been properly served unless the defendant voluntarily appears or waives defective service.   *Sieg v. Karnes*, 693 F.2d 803, 807 (8th Cir. 1982).   Jesson and Prescott have voluntarily appeared through counsel and moved to dismiss Stone's claims for reasons other than failure of service.   Accordingly, the motion to dismiss for insufficiency of process as to Jesson and Prescott is denied.   The Court finds no clear error as to the remainder of the R&R's analysis to which no objections were filed.   Those conclusions are adopted.

To summarize, Stone's claims against Defendant Carlson are dismissed in their entirety.   Stone's claims against all Defendants in their individual capacities also are dismissed.   The only claims that may proceed against Defendants Jesson, Benson,

Lundquist, Prescott, Liggett and Moser[9] are for prospective injunctive relief for actions taken in their official capacities allegedly in violation of Stone's First Amendment rights. Stone's other claims against these defendants are dismissed.

## IV.    Stone's Motion to Enjoin Other MSOP Clients from Filing Documents in this Case or from Filing Other Lawsuits Challenging the Media Policy

Since the R&R was issued, Stone filed a motion for injunctive relief to prevent other MSOP clients from filing documents in this case and from filing other lawsuits challenging the Media Policy. Stone asserts in the motion that other MSOP clients "would like the instant suit dismissed and brought under their name" and that those MSOP clients "have conspired to retaliate against Plaintiff for exercising his First Amendment right." Defendants did not respond to Stone's motion.

To the extent that Stone's motion seeks to prohibit other MSOP clients from joining or filing documents in this case, the motion is premature. No other MSOP client has filed documents in this case or moved to intervene. Should that circumstance arise, Stone may oppose any motion to intervene or move to strike any filing by a non-party.

Stone's motion also seeks an injunction to preclude other MSOP clients—specifically, David Jennetta "or anyone acting in concert or cooperation with him"—from filing a lawsuit concerning enforcement of the Media Policy. Stone argues that an injunction is warranted because Jennetta and other MSOP clients are "conspir[ing] to deprive Plaintiff of his civil rights during the pendency of this litigation." A pre-filing

---

[9]    As explained in Part II.A, Stone's claims are against the officials who currently occupy the official roles that were held by each of these individuals when the complained-of conduct occurred.

injunction may be issued to prevent a litigant's repetitive, abusive conduct if the injunction is narrowly tailored to address the litigant's particular abuses of the judicial process and the litigant is given notice and an opportunity to respond. *In re Pointer*, 345 F. App'x 204, 205 (8th Cir. 2009) (per curiam).

Stone has not provided any information about Jennetta's, or any other MSOP client's, abuse of the judicial process that would justify an injunction barring future lawsuits. Stone has not alleged that Jennetta or other MSOP clients are using litigation for a harassing purpose. Instead, Stone complains about conduct directed at him outside of these proceedings because of this lawsuit. Because there is no allegation that Jennetta or any other MSOP client has abused the judicial process and there has been no attempt by anyone other than the parties to file documents or intervene in this case, the Court denies Stone's "Motion to Enjoin Other Parties from [Filing] on Suit Without First Obtaining Permission from Court or from Plaintiff Charles R. Stone Exclusively."

## ORDER

Based on the R&R, the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1.      Defendants' objections to the R&R, (Dkt. 41), are **SUSTAINED IN PART** and **OVERRULED IN PART**, as set forth herein.

2.      Plaintiff's objections to the R&R, (Dkt. 44), are **SUSTAINED IN PART** and **OVERRULED IN PART**, as set forth herein.

3.      The R&R, (Dkt. 36), is **ADOPTED IN PART** and **REJECTED IN PART**, as set forth herein.

4.   Defendants' motion to dismiss, (Dkt. 9), is **GRANTED IN PART** and **DENIED IN PART**, as follows:

a.   Plaintiff's Section 1983 claims for damages against Defendants in their official and individual capacities are **DISMISSED WITH PREJUDICE**.

b.   Plaintiff's Section 1983 claim for prospective injunctive relief against Defendant Carlson is **DISMISSED WITHOUT PREJUDICE**.

c.   Plaintiff's claims challenging the facial constitutionality of the Media Policy and Minn. Stat. § 246B.04 are **DISMISSED WITH PREJUDICE**.

d.   Plaintiff's Section 1983 claims based on his rights to procedural due process and equal protection under the Fourteenth Amendment to the United States Constitution are **DISMISSED WITHOUT PREJUDICE**.

e.   Plaintiff's Section 1983 claims based on his right to substantive due process under the Fourteenth Amendment to the United States Constitution are **DISMISSED WITH PREJUDICE**.

f.   Plaintiff's access to the courts claim is **DISMISSED WITHOUT PREJUDICE**.

5.   Plaintiff's motion for a permanent injunction, (Dkt. 18), is **DENIED**.

6.   Plaintiff's motion to dismiss Defendants' motion to dismiss, (Dkt. 26), is **DENIED**.

7.    Plaintiff's "Motion to Enjoin Other Parties from [Filing] on Suit Without First Obtaining Permission from Court or from Plaintiff Charles R. Stone Exclusively," (Dkt. 42), is **DENIED**.


Dated:  March 17, 2017                                    s/Wilhelmina M. Wright
                                                         Wilhelmina M. Wright
                                                         United States District Judge