*Stone v. Jesson, et. al.*

U.S. District Court File No. 11-cv-00951 (WMW/HB)

DECLARATION OF
DR. NICOLE ELSEN

# EXHIBIT 1

# MEDIA POSSESSION BY CLIENTS
## Minnesota Sex Offender Program

Issue Date:   2/5/19        Effective Date:     2/5/19           Policy Number: 420-5230

**POLICY:**   The Minnesota Sex Offender Program (MSOP) limits client access to certain media to further the therapeutic environment and maintain the safety and security of the facility for clients, staff and the public.

**AUTHORITY:**      Minn. Stat. §§ 246B.04, subd. 2; 617.241, subd. 1; and 617.246, subd. 1.

**APPLICABILITY:**  MSOP, program-wide

**PURPOSE:**   To provide guidelines for client access to media, supporting the therapeutic environment of the program and complying with the statutory restrictions for MSOP clients' access to certain materials.

**DEFINITIONS:**
Box set - a set of movies or television seasons or series, which are packaged together and sold as a unit.

Digital copy – a commercially distributed computer file containing a media product such as a film or music album.

Media – pictures, reading materials, music/audio, videos, and video games.

Media Review Team (MRT) – a team at each site appointed by the facility director(s) and clinical director(s), comprised of a group supervisor, a clinical supervisor/clinical program manager, a Special Services staff and two other clinical staff, or their designees.

Music/Audio – commercially-produced compact discs (CDs), and audio books.

Nudity – visibly exposed, unclothed, or uncovered breasts with nipples and/or areola and/or genitals, and/or up close depictions of the subject's anus.

Pictures – include, but are not limited to, paintings, drawings, photographs, prints, photocopies, posters, slides, negatives and computer-generated images.

Prurient – an appeal to a morbid, degrading and unhealthy interest in sex.

Questionable – media not on the permitted or prohibited media lists, media not clearly permitted or prohibited, media that appears mislabeled upon initial review by Special Services staff, and media that appears to be counter-therapeutic.

Reading materials – include, but are not limited to, magazines, books, periodicals, catalogs, pamphlets, newsletters, newspapers and advertisements.

Season – a collection of episodes aired within a certain time frame that comprise a segment of the show's overall run.

Series – a connected set of television episodes for a particular program/show, spanning one or more seasons.

Sexual Conduct – (see Minn.Stat. § 617.241, subd. 1 and Minn.Stat. § 617.246, subd. 1) includes:
- a. sexual intercourse, including any type of vaginal, oral or anal penetration;
- b. human genitalia in a lewd and explicit fashion;
- c. masturbation;
- d. excretory functions;
- e. sexual relations between a human being and an animal; or
- f. sadomasochistic abuse.

Thumbnail – a reduced size version of a picture or still video image, shown as a separate small copy of the original image.

Videos – include, but are not limited to, commercially-produced videodiscs and movies.

Video games – including, but not limited to commercially-produced video games.

**PROCEDURES:**
A. Prohibited Materials
  1. Obscene materials are prohibited (See Minn.Stat. § 246B.04, subd. 2 and Minn. Stat. § 617.241, subd. 1.)
     In order to determine that media is obscene, all of the following must be found:
     a) the average person, applying contemporary community standards, would find that the media item, as a whole, appeals to the prurient interest in sex; and
     b) the media item depicts sexual conduct, as defined in this policy, in a patently offensive manner; and
     c) the media item, taken as a whole, does not have serious literary, artistic, political, or scientific value.

  2. Pornographic work is prohibited (See Minn.Stat. § 246B.04, subd. 2 and Minn. Stat. § 617.246, subd. 1.)
     Pornographic work, as defined by statute:
     a) an original or reproduction of a picture, film, photograph, negative, slide, videotape, videodisc, or drawing of a sexual performance involving a minor; or
     b) any visual depiction, including any photograph, film, video, picture, drawing, negative, slide, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means that:
        1) uses a minor to depict actual or simulated sexual conduct; or
        2) has been created, adapted, or modified to appear that an identifiable minor is engaging in sexual conduct; or
        3) is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaging in sexual conduct.

  3. Additional prohibited materials
     a) All movies rated "NC-17" or "X" by the Motion Picture Association of America (MPAA).

        b) All movies rated "R" and "A" by the Canadian Motion Picture Rating System that are not on the current permitted list.

        c) All movies "Unrated" by the MPAA and not on the current permitted list, except as permitted in B2

        d) All movies "Not Rated" by the MPAA and not on the current permitted list, except as permitted in B2.

        e) All incoming thumbnail images of people.

        f) Pictures or reading material depicting fully or partially nude minor children with clearly visible genitals.

        g) Pictures or reading material showing the unclothed or clothed figure of a minor child posing in a sexually suggestive posture or sexual manner.

        h) Media, which taken as a whole, promotes sexual violence, child molestation, or incest or, which taken as a whole, predominantly and prominently displays nudity and/or sexual conduct and has the primary purpose of sexual arousal.

        i) Media determined to be contraband per MSOP Division Policy 415-5030, "Contraband."

        j) Media displaying scenes or depictions of sexual violence including, but not limited to, rape, physical mutilation, humiliation or torture.

        k) Pictures or reading materials showing nudity, except as outlined in B.6 below.

        l) Video games with an Entertainment Software Rating Board (ESRB) rating of EC (Early Childhood) and RP (Rating Pending).

        m) Digital copies of media.

        n) Items of media offered through the Mail-a-Book Program.

        o) Box sets, seasons or series not meeting criteria in Sections B.1 through B.3 below.

    4. Clients are prohibited from purchasing or possessing more than one copy of a media item in any format.

B. Permitted Materials

    1. Movies rated "G," "PG" or "PG-13" by the Motion Picture Association of America (MPAA), and television shows aired prior to 1975, and those rated "TV-Y," "TV-Y7," "TV-G," "TV-PG," or "TV-14."

    2. Unrated or Not Rated movies that are educational or that are related to physical fitness, music concerts, spirituality or relaxation/mindfulness, and "made for television" programs that are non-sexual in nature, unless otherwise prohibited under section of A.3 h-j above or questionable as in D.5 below.

3. Movies with the Canadian Motion Picture Rating of "G," "PG," and "14A."

4. Box sets, seasons and series falling under of B1-B3 above, or already on the Permitted Media List (420-5230a).

5. Games rated "E," "E10+," or "T" by the ESRB, and those on the Permitted Video Game List (420-5230b).

6. Media which, taken as a whole, does not promote sexual violence, child molestation or incest or which, taken as a whole, does not predominately and prominently display nudity and/or sexual conduct and does not have the primary purpose of sexual arousal.

7. Materials provided by MSOP that would otherwise be prohibited (including obscene material and pornographic work) may be viewed for therapeutic purposes (see MSOP Division Policy 215-5030, "Arousal Management/Hypersexuality Programming").

C. Client Access to Media
1. Magazines
   Clients may order magazines not containing or qualifying as prohibited material. Staff forward incoming magazines with questionable content to the MRT.

2. Newspapers
   Clients may order or receive newspapers with the exception of:
   a) *The Star Gazette*;
   
   b) *Pine Journal*;
   
   c) *Askov American*;
   
   d) *The St. Peter Herald* (Community Preparation Services (CPS) clients in re-entry stage only – newspaper may be allowed with the approval of the client's clinical supervisor and CPS Operations Manager; clients may not share these with any other client); and
   
   e) *The Mankato Free Press* (CPS clients in re-entry stage only – newspaper may be allowed with the approval of the client's clinical supervisor and CPS Operations Manager; clients may not share these with any other client).

3. Books
   Clients may order books not containing or qualifying as prohibited material. Staff forward incoming books containing questionable material to the MRT.

4. Videos and Music
   a) Clients may purchase or acquire new, or rent commercially-produced videos or music.
   
   b) CPS clients in the re-entry stage may purchase used items during community outings; such items may not be received via mail or during visits. Movies on the Permitted Media List (420-5230a) do not need to be reviewed by the MRT, unless deemed questionable.

   c) Clients may request to have one "R"-rated, Canadian Motion Picture Association "18A," movie meeting the criteria in section B2 above or "TV-MA"-rated DVD/Blu-ray reviewed per month.

   d) Clients who order a season are allowed to have 180 minutes of it reviewed each month, which will be considered as their one review for each month it takes to complete this review.

   e) Clients can also use their one review per month in order to appeal a movie on the prohibited list which has not already been appealed.

   f) With approval by their primary therapist, and upon review by the MRT, a client may view a video of a major life event. A client may request to keep the video in his/her possession, in consultation with and with approval from the clinical supervisor and unit director/CPS Operations Supervisor.

   g) Seasons are permitted only if all discs are permitted. Series and box sets not complying with Section B.1 and B.2 above are prohibited.

  5. Pictures
   Clients may receive pictures not containing or qualifying as prohibited material. Staff forward questionable incoming pictures to the MRT.

  6. Video Games
   a) Games rated "E," "E10+," or "T" by the ESRB, and those currently on the Permitted Video Game List (420-5230b) are permitted.

   b) The MRT reviews the Permitted Video Game List (420-5230b) annually for possible additions.

D. Processing Media

  1. Special Services staff visually scan all media when it arrives at the facility.

  2. If the media is on the Prohibited Media List, Special Services staff must secure the item as contraband and send the client a Contraband Notice (420-5250b).

  3. If the media contains or qualifies as another form of contraband under MSOP Division Policy 415-5030, Contraband," MSOP Division Policy 225-5310, "CPS Contraband," MSOP Division Policy 420-5250, "Client Property," or MSOP Division Policy 225-5300, "CPS Client Property," Special Services staff must secure the item as contraband and send the client a Contraband Notice.

  4. If a media item is on the Permitted Media List, or is otherwise categorically permitted under this policy, Special Services staff process the item according MSOP Division Policy 420-5250, "Client Property."

  5. Special Services staff must secure questionable media on a Notice and Receipt of Secured Items form (420-5250a) and route it to the MRT for review.

6. Staff may secure questionable media as part of a room search, place it on a <u>Notice and Receipt of Secured Items form (420-5250a)</u> and route it to the MRT for review.

E. <u>Media Review Team</u>

1. The MRT reviews questionable media and media not on the current Permitted or Prohibited Media Lists. The review includes watching, reading, listening to or scanning the item to determine whether it contains prohibited material as defined in section A.

2. The MRT updates the Permitted and Prohibited Media Lists monthly (except for the <u>Permitted Video Game List (420-5230b)</u>, which is updated annually) and sends them to the MSOP Policy and Compliance Director to be uploaded on the Client Computer Network. Clients are responsible to monitor updates to these lists each month. For items previously allowed and subsequently disallowed, refer to <u>MSOP Division Policy 420-5250, "Property"</u> Section I.1.

3. The MRT meets at least every other week and keeps meeting minutes.

4. The MRT documents the outcome of reviews on <u>Notice and Receipt of Secured Items (420-5250a)</u> forms and/or completes a <u>Contraband Notice (420-5250b)</u> for media deemed to be prohibited.

5. If the media is approved, Special Services staff distribute the item to the client.

6. Clients may appeal the decision of the MRT to the facility clinical director/designee on a <u>Client Request (420-5099a)</u> or by marking the appropriate box on the <u>Contraband notice (420-5250b)</u>.

7. If a client appeals a contraband decision on a media item, the required disposition timeframe is stayed until the facility clinical director/designee has made a determination. If the facility clinical director/designee deems the media contraband, Special Services staff complete a <u>Contraband notice (420-5250b)</u>.

8. Media identified by staff as potentially violating federal or state laws are secured as evidence according to <u>DCT Security Policy 145-1035, "Evidence Handling by Staff"</u> and routed to the Office of Special Investigations (OSI) for review.

F. <u>Primary Therapist Review and Input</u>

1. As part of the treatment process, a primary therapist, in consultation with the clinical supervisor, may review a client's permitted media items and/or media use.

2. Through review, the primary therapist, in consultation with the clinical supervisor, may determine certain media is counter-therapeutic for a particular client because it is related to his/her sexual offending pattern, which may include previously permitted media.

3. When media is determined to be counter-therapeutic, the primary therapist meets with the client and documents the meeting in an Individual Progress Note (215-5007d-4020) (Phoenix).

4. The primary therapist, with the support of the clinical supervisor, can require a client to send out or dispose of media deemed to be counter-therapeutic.

5. Clients are expected to discuss media depicting sexual conduct in their core therapy group(s) and with their primary therapists.

6. As part of the treatment process, otherwise permitted materials the client has misused in the past may be prohibited, providing the restriction is proportionate to the misuse.

**REVIEW:** Annually

**REFERENCES:** Minn. Stat. § 246B.04, subd. 2: "Ban on Obscene Material or Pornographic Work."
Minn. Stat. § 617.241.
Minn. Stat. § 617.246.
MSOP Division Policy 420-5250, "Client Property"
MSOP Division Policy 225-5300, "CPS Client Property"
MSOP Division Policy 420-5030, "Client Mail"
MSOP Division Policy 415-5030, "Contraband"
MSOP Division Policy 225-5310, "CPS Contraband"
MSOP Division Policy 220-5047, "Library Use"
MSOP Division Policy 415-5010, "Searches – Clients"
MSOP Division Policy 225-5020, "CPS Client Liberties"
MSOP Division Policy 220-5055, "Game Systems"
MSOP Division Policy 215-5030, "Arousal Management/Hypersexuality Programming"
DCT Security Policy 145-1035, "Evidence Handling by Staff"

**ATTACHMENTS:** Permitted Media and Prohibited Media Lists (420-5230a)
Permitted Media and Prohibited Media Lists (420-5230a) (18-pt font)
Permitted Video Game List (420-5230b)

Contraband notice (420-5250b)
Notice and Receipt of Secured Items (420-5250a)
Client Request Form (420-5099a)
Individual Progress Note (215-5007d-4020) (Phoenix)

**SUPERSESSION:** MSOP Division Policy 420-5230, "Media Possession by Clients," 12/4/18.
MSOP Division Policy 420-5230, "Media Possession by Clients," issued 1/8/19 and effective 2/5/19.
All facility policies, memos, or other communications whether verbal, written, or transmitted by electronic means regarding this topic.

/s/
Nancy A. Johnston, Executive Director
Minnesota Sex Offender Program