UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Charles Richard Stone,<br><br>Plaintiff,<br><br>v.<br><br>Lucinda E. Jesson, et al.,<br><br>Defendants. | Case No. 11-cv-0951 (WMW/HB)<br><br>**REPORT AND RECOMMENDATION** |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Plaintiff Charles Richard Stone's Motion for a Temporary Restraining Order [Doc. No. 99]. For the reasons set forth below, the Court recommends that the motion be denied.

**I.     Background**

In 2011, Plaintiff initiated this lawsuit challenging the Minnesota Sex Offender Program ("MSOP") policy governing media possession by clients[1] ("Media Policy"). (Compl. ¶¶ 1–2 [Doc. No. 1].) Through the Media Policy, the MSOP restricts the type and content of pictures, reading materials, music, audio, videos, and video games accessible to clients. (Elsen Decl. Ex. 1 at 1 [Doc. No. 111].) The Media Policy was created to provide guidelines for the approval or restriction of access to media by clients and help facilitate client rehabilitation. (*Id.*)

---

[1] Plaintiff is a civilly committed sex offender currently housed in Moose Lake, Minnesota. (Compl. ¶¶ 7, 24.) Offenders civilly committed under the MSOP are referred to as "clients" in the Media Policy and by MSOP staff.

The Media Policy is frequently revised. Relevant here, a version of the Media Policy went into effect on December 4, 2018 (the "Former Policy"). (Stone Decl. ("Pl.'s Decl.") Ex. C. [Doc. No. 101].) The MSOP proposed revisions to the Former Policy on January 8, 2019, and those revisions were intended to take effect on February 5, 2019 (the "January 2019 Revisions"). (Pl.'s Decl. Ex. D.) But before that happened, the MSOP again revised the Former Policy on February 5, 2019 (the "Current Policy"). (Elsen Decl. ¶ 3.) The Current Policy is now in effect. (*Id.*)

Plaintiff filed the instant motion seeking a temporary restraining order ("TRO") on January 23, 2019—*after* proposal of the January 2019 Revisions but *before* implementation of the Current Policy. (Elsen Decl. ¶ 3.) Plaintiff seeks to enjoin Defendants from: (1) rendering effective or enforcing certain revisions to the Former Policy contained in the January 2019 Revisions; (2) taking any action that would amend, modify, adjust, or change the Media Policy; and (3) taking any action to create, amend, modify, adjust, or change any other policy, rule, or practice that would further restrict the right of any client civilly committed in the MSOP "to receive or possess any video beyond the restrictions in place in any policy, rule, or practice, or list of 'Prohibited' videos" of the MSOP. (Pl.'s Mem. Supp. Mot. TRO ("Pl.'s Mem.") at 1–3 [Doc. No. 100].)

## II.   Applicable Legal Standard

Courts may grant injunctive relief through a preliminary injunction or a TRO. *See* Fed. R. Civ. P. 65(a), (b). TROs are appropriate where the moving party shows reason why the opposing party should not be provided advance notice. *See* Fed. R. Civ. P.

2

65(b)(1).  But where a defendant has an opportunity to respond to a motion for a TRO, the motion will be construed as one for a preliminary injunction.  *Carlson v. City of Duluth*, 958 F. Supp. 2d 1040, 1052 n.1 (D. Minn. 2013) (construing motion for TRO as a motion for preliminary injunction where defendant responded to the motion).  Accordingly, because Defendants have responded to Plaintiff's motion, the Court construes Plaintiff's motion as one for a preliminary injunction.  *See id.*

The party seeking a preliminary injunction "must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."  *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam).  If so related, the court will consider four factors in determining whether to grant a preliminary injunction: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest."  *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).  "The threshold inquiry is whether the movant has shown the threat of irreparable injury."  *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).  "Once a court determines that the movant has failed to show irreparable harm absent an injunction, the inquiry is finished and the denial of the injunctive request is warranted."  *Id.* at 420.

**III.   Discussion**

    **A.   Relationship to the Complaint**

Defendants argue that Plaintiff's requested injunctive relief does not relate to the

subject matter of the underlying complaint.  The purpose of a preliminary injunction is "to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits."  *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994).  Thus, the moving party "must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."  *Id.*

Here, Plaintiff's complaint challenges, *inter alia*, Defendants' implementation of the Media Policy (*see* Compl. ¶¶ 1–6; Order at 8, Mar. 10, 2017 [Doc. No. 49]), and the instant motion seeks to require Defendants to comply with the Media Policy and enjoin them from making changes to the Media Policy (*see* Pl.'s Mem. at 1–3).  The Court finds the requested relief thus has some relationship to the underlying complaint.  Accordingly, the Court cannot conclude the injunctive relief sought in the instant motion is unrelated to the conduct alleged in the Complaint.

### B.   Injunctive Relief Preventing Implementation of the January 2019 Revisions

Plaintiff first asks the Court enjoin Defendants from rendering effective or enforcing certain provisions contained within the January 2019 Revisions.  (*See* Pl.'s Mem. at 1–2.)  But subsequent to Plaintiff filing the instant motion, Defendants decided not to implement the January 2019 Revisions and to implement the Current Policy instead.  (Elsen Decl. ¶ 3.)  Consequently, Plaintiff's first request for injunctive relief—to prevent the implementation of the January 2019 Revisions—is moot.  *See, e.g.*, *Pratt v. Corrections Corp. of Am.*, 267 F. App'x 482, 483 (8th Cir. 2008) (holding a prisoner's claim for equitable relief was moot where he was no longer subject to the challenged

conditions); *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (same); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (same).  The Court therefore recommends this request for injunctive relief be denied as moot.

        **C.**        **Injunctive Relief Preventing Further Changes to the Media Policy or Creation of Other Rules Limiting Client Access to Media**

Plaintiff next asks the Court to enjoin Defendants from further amending or modifying the Media Policy, or creating any other rule limiting client access to media. (Pl.'s Mem. at 1–2.)  Plaintiff suggests "[t]here can be no dispute that the threat of irreparable harm is imminent and real" because denial of an injunction would give Defendants the ability "to do anything they want, and ultimately take away all of Plaintiff's First Amendment Rights."  (Pl.'s Mem. at 5–6.)  As discussed below, the Court disagrees.

Injunctive relief is warranted if the threat of irreparable harm is "certain and great and of such imminence that there is a clear and present need for equitable relief."  *Iowa Util. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996).  The loss of a First Amendment freedom, "for even [a] minimal period[] of time, unquestionably constitutes irreparable injury."  *Powell v. Noble*, 798 F.3d 690, 702 (8th Cir. 2015) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  But the claimed harm must "be actual and not theoretical," and must be "likely" to occur.  *Packard Elev. v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986) (quotation omitted).  In other words, "[i]njunctive relief is not appropriate when the harm is merely speculative or based on a mere assumption of possible results."  *Cargill, Inc. v. Hartford Accident & Indem. Co.*, 531 F. Supp. 710, 715 (D. Minn. 1982).

5

As mentioned above, Plaintiff has only presupposed that "the threat of irreparable harm is imminent and real" and that future revisions to the Media Policy would lead to the loss of "all of Plaintiff's first amendment rights . . . ." (Pl.'s Mem. at 5–6.) But Plaintiff has provided no evidence or support beyond his own speculation that Defendants will revise the Media Policy, or when such a revision might occur. Nor has Plaintiff provided any evidence or reason to believe that if Defendants do revise the Media Policy, they will do so in a way that violates Plaintiff's First Amendment rights. In short, Plaintiff can only speculate as to what *might* occur in the future—not what is "certain" or "likely" to occur. This degree and type of speculation is insufficient for a grant of injunctive relief. *Cf. Packard Elevator*, 782 F.2d at 115–116 (denying injunctive relief because the movant failed to show it was likely the opponent would engage in predatory price fixing); *Lightfoot v. Jewell*, No. 13-cv-2958 (DWF/JJK), 2013 WL 6511852, at *4 (D. Minn. Dec. 12, 2013) (denying injunctive relief because a *potential* erroneous exercise of jurisdiction by a tribal court was not sufficient to establish irreparable harm).

Even so, the Court remains aware that the Media Policy is frequently revised and amended. To that end, and to the extent Plaintiff considers a revised version of the Media Policy unconstitutional, nothing in this Report and Recommendation is intended to preclude Plaintiff from filing a new motion.[2] But without an actual set of proposed

---

[2] The Court acknowledges—and agrees with—Defendants' argument that Plaintiff failed to follow the Local Rules for the District of Minnesota in filing the instant motion. Civilly-committed litigants are not excepted from such procedural requirements. Plaintiff is advised that the Court will require compliance, to the extent practicable, with the Local Rules, the Federal Rules of Civil Procedure, the Court's Practice Pointers, and the Pretrial Scheduling Order [Doc. No. 97] for all future motions.

revisions, injunctive relief would necessarily require speculation and guesswork, which would not be appropriate.

Plaintiff has failed to show a threat of irreparable harm. This alone is a sufficient basis on which to deny Plaintiff's motion, and there is no reason to consider the other *Dataphase* factors. *See Gelco Corp.*, 811 F.2d at 420.

## IV.   Recommendation

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Temporary Restraining Order [Doc. No. 99] be **DENIED**.


Dated:  March 7, 2019           s/ *Hildy Bowbeer*
                                HILDY BOWBEER
                                United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).